UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JONATHON WILLIAM-DURAND
NEUHARD,

    Defendant.
_____/

Case No. 2:15-cr-20425

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [28]**

**I. INTRODUCTION**

Defendant Jonathon Neuhard was charged in a July 9, 2015 indictment with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2); and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt. No. 12, pp. 1–3 (Pg. ID No. 21–23). Through the present motion filed on November 30, 2015, Defendant seeks to suppress all evidence seized pursuant to a search warrant executed April 1, 2015, as well as evidence derived from that initial search. Dkt. No. 28, p. 1 (Pg. ID No. 59).

A hearing was held on this motion on February 23, 2016. Having considered the parties' briefs in support of and in opposition to Defendant's motion, their accompanying exhibits, and the remainder of the record, the Court now is prepared to rule on Defendant's motion. For the reasons stated below, the Court denies this motion.

## II. BACKGROUND

On March 10, 2015, an individual ("Reporting Person," or "RP") reported to the Madison Heights Police Department that Defendant had sexually assaulted her minor daughters. Dkt. No. 28-1, pp. 4–5, ¶¶ D-1–D-7 (Pg. ID No. 80–88). Her daughters were ages nine (hereinafter, "Minor Victim One," or "MV-1") and seven (hereinafter "Minor Victim Two," or "MV-2"). *Id.* at ¶¶ E-1–E-2.

Detective Sergeant Marc Zupic interviewed RP on March 11, 2015. *Id.* at ¶ E. During the interview with Zupic, RP stated that she had left her daughters in the care of Defendant and his wife on February 20, 2015. *Id.* at ¶ E-3. MV-1 later told RP that Defendant took her to the basement, showed her pornographic movies, asked her if she was ready to have sex, and tried to put his hand down her pants. *Id.* at ¶ E-4. Defendant had resided at a residence on Brettonwoods Street in Madison Heights at the time of the abuse, but he was asked to move out after MV-1 and MV-2 disclosed

their abuse. *Id.* at ¶¶ D-5, E-6. He relocated to a residence on Christine Terrace. *Id.* at ¶ E-6.

A week later, on March 17, 2015, MV-1 was interviewed by a child forensic interviewer while Zupic observed from another room. *Id.* at ¶ F. MV-1 stated that on a day when she was nine years old, Defendant had taken her down to the basement to watch a "sex video," involving a naked "boy" and "girl," where the "a girl suck[ed] a boy's part" and then "the boy shoved his part into the girl." *Id.* at ¶¶ F-4, F-8. Defendant allegedly told MV-1 that "this is what you have to do to me" and then tried to put his hand down her pants. *Id.* at ¶ F-5. MV-1 states that Defendant then took off his pants and underwear, attempted to take off her pants, and said "let me lick it," in reference to MV-1's genitals. *Id.* at ¶ F-6. MV-1 further stated that she saw Defendant's penis and that Defendant began to masturbate in front of her. *Id.* at ¶ F-7.

MV-1 also stated that Defendant had abused her when she was younger. *Id.* at ¶¶ F-9, F-11. When she was eight years old, MV-1 stated that Defendant tried to put his tongue in her mouth, touched her inside her clothes, and rubbed her genitals. *Id.* at ¶ F-9. MV-1 stated that Defendant tried to put his penis in her vagina and that Defendant's actions "really hurt" her. *Id.* at ¶ F-10. Additionally, MV-1 stated that Defendant took pictures of her bare chest and genitals with his cell phone when she

was seven or eight years old. *Id.* at ¶ F-11. MV-1 also stated that Defendant pushed her head down so that his penis was in her mouth, and then "white stuff came out." *Id.* at ¶ F-12. MV-1 did not tell anyone because she said that Defendant raised a knife and threatened to kill her. *Id.* at ¶ F-14. The alleged abuse occurred at the residence on Brettonwoods, according to MV-1. *Id.* at ¶¶ F-3, F-8, F-9.

MV-2's forensic interview commenced shortly after MV-1's was completed. *Id.* at ¶ F-15. MV-2 stated that when she was six years old, Defendant reached inside her underwear and put his hand inside of her genitals, causing her pain. *Id.* at ¶¶ F-21–F-23. MV-2 stated that this incident accorded in the backyard of the residence on Brettonwoods. *Id.* at ¶ F-20. Defendant allegedly held a blade and threatened to "beat the hell out of" MV-2 if she told anyone. *Id.* at ¶ F-25.

Zupic was contacted by the caseworker with Child Protective Services who performed a home visit to Defendant's residence on March 18, 2015. *Id.* at ¶¶ G–H. From speaking with the caseworker and the community manager of Defendant's housing development, Zupic confirmed Defendant's current address and the car he drove, which matched the description given by RP. *Id.* at ¶¶ E-7, G–J. Zupic also personally observed Defendant's residence and car. *Id.* at ¶ J.

On March 26, 2015, a state court magistrate judge signed a warrant that authorized the search of Defendant's current residence and car. *Id*. at 2–3 (Pg. ID No. 78–79). The search listed the property to be seized and searched as:

> Any and all records or evidence of the crime of child sexual assault/abuse, including but not limited to: proofs of residence, cell phones, smart phones, tablets, or any other handheld/portable electronic devices, computers, including laptops and notebooks, video game consoles, keyboards, monitors, scanners, printers, printed material, including copies of websites, emails and printed material, handwritten material, photographs related to child pornography of the victims . . . terminals, towers, computer hardware and software, external hard drives, modems, cables, digital cameras, handwritten notes and printed materials describing their operation, any password list(s) to enter secured files therein/thereafter, any and all information and/or data stored in the form of magnetic or electronic coding on computer media or media capable of being read by drives, CD's or DVD's, secure digital (SD) cards, removable hard disk cartridges, and any other device designed to store computer data, with the intent that all the aforementioned electronic and electronic storage devices that are seized will be analyzed by a forensic examiner.

*Id*. at 2. The warrant was executed on April 1, 2015, *id*., and seven electronic items, including computers, tablets, and a phone, were seized. Dkt. No. 28, p. 4 (Pg. ID. No. 62).

Forensic examination uncovered four images of child pornography on a memory card seized in the search. *Id*. at 5; Dkt. No. 34, p. 6 (Pg. ID No. 101). The photos' metadata indicated that the photos were taken with a cell phone matching the one seized from Defendant's residence. Dkt. No. 34, p. 7 (Pg. ID

No. 102). One image depicted a prepubescent female's vagina; two images depicted a prepubescent female's vagina with the hand of an adult spreading the labia; and one image depicted an adult male's penis penetrating a prepubescent female's vagina. Dkt. No. 34, pp. 6–7 (Pg. ID No. 101–02). In the photo, the child is sitting on what appeared to be a black and white zebra-striped sheet or blanket. *Id*. A blanket matching this description was visible in a dresser drawer of Defendant's home, as shown in photographs taken during the execution of the warrant. *Id*. at 6.

Additionally, examination of one of Defendant's computers resulted in the discovery of one image and two videos containing suspected child pornography. Dkt. No. 28, p. 5 (Pg. ID No. 63).

On July 9, 2015, Defendant was charged in a three-count indictment with (1) Production of Child Pornography; (2) Receipt of Child Pornography; and (3) Possession of Child Pornography. *Id*. at 5–6. Defendant now seeks to suppress the images and video extracted from the computer and memory card. *Id*. at 3.

### III. LEGAL STANDARD

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth Amendment specifies the two matters that must be "particularly describe[ed]" in the warrant: "the place to be searched" and "the persons or things to be seized." *United States v. Grubbs*, 547 U.S. 90, 97 (2006). With this provision, the Fourth Amendment sought to "curb the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011).

The particularity requirement prevents general searches by requiring a neutral judicial officer confine the scope of the search to areas and items for which there exists probable cause that a crime had been committed. *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 441 (6th Cir. 2006). The Sixth Circuit has determined that the particularity requirement encompasses two main issues. *Richards*, 659 F.3d at 537 (quoting *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999)). The first issue is "whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take." *Id*. The second issue is "whether the category as specified is too broad in the sense that it includes items that should not be seized." *Id*. "However, the degree of specificity required is flexible and will vary depending on the crime

involved and the types of items sought." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999) (quoting *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988)).

Even if a warrant is found to be overbroad, the finding does not require suppression of all items seized pursuant to the warrant. *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006). Instead, the court "is to sever the infirm portion of the search warrant from the remainder which passes constitutional muster." *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991). Items seized pursuant to valid portions of the warrant may be introduced as evidence, even if other portions of the search warrant were overbroad. *Id*.

## IV. DISCUSSION

### A. The Motion To Suppress Will Be Denied Because The Evidence Was Seized Pursuant To Valid Search Warrants

Defendant moves to suppress the evidence seized from his home on April 1, 2015, September 14, 2015, and September 30, 2015 on the grounds that (1) the search exceeded the probable cause established by the warrant application and affidavit; and (2) the warrant on its face failed the particularity requirement of the Fourth Amendment, rendering it an invalid "general warrant." *See* Dkt. No. 28.

### 1. The Police Had Probable Cause To Believe That A Crime Was Committed, And Limited The Scope Of The Search To Relevant Areas And Items

Defendant first asserts that the affidavit attached to the search warrant presented "limited" facts to the magistrate to establish probable cause that all of Defendant's electronics would contain child pornography. Dkt. No. 28, p. 7 (Pg. ID No. 65). Defendant argues that evidence of child molestation alone is insufficient to establish probable cause for a warrant to search for child pornography. *Id*. at 8.

There must be a nexus between the place to be searched and the evidence sought to establish probable cause for the search warrant's issuance. *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). This has been interpreted as requiring the magistrate signing the warrant to have "a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam)). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Resolution of doubtful or marginal cases should largely be determined by according preference to warrants, so that law enforcement officers are encouraged to continue seeking them. *Id*. at 237 n.10.

After reviewing the warrant and the affidavit, it is clear that the allegations of child sexual assault and abuse were sufficiently intertwined with allegations involving the creation and possession of child pornography to warrant a search of Defendant's electronics for evidence of Defendant's abuse of MV-1. The search warrant specifically sought evidence of "child sexual assault/abuse" based on MV-1's allegations. Dkt. No. 28-1, p. 2 (Pg. ID No. 78). MV-1's allegations, specifically referenced in the affidavit attached to the warrant, indicate that Defendant's computers and portable electronic devices contained evidence of the alleged abuse, such as photos of her genitals and bare chest, and a "sex video" involving a "boy" and a "girl." *Id.* at 5–6. Since MV-1 referred to the individuals engaging in sexual activities in the video as a "boy" and a "girl," rather than a "man" and a "woman," it is reasonable to conclude that the video MV-1 described involved child pornography. MV-1 provided details that indicated that the video was played on a computer belonging to Defendant, and the photos were taken while Defendant had his cell phone in his hand. *Id.* at 6. Accordingly, there was ample evidence provided to the magistrate to indicate that the photos and video sought by the warrant would substantiate MV-1's allegations of sexual abuse.

Defendant relies on *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) and *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006) to support

his argument that law enforcement had no probable cause to search for child pornography on his electronics. Although *Adkins* states that "[s]tanding alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography," it goes on to find that a law enforcement agency's "institutional knowledge" can support a finding that a defendant is reasonably likely to possess child pornography. 169 F. App'x at 967.

*Hodson*, which quoted the above dictum from *Adkins*, determined that the search warrant in question lacked probable cause because it searched for evidence of "an *entirely different* crime." 543 F.3d at 292 (emphasis added). *Hodson* confided that he had molested his young nephew to an undercover detective on the internet. *Id.* at 287. After the police determined that there were no facts to substantiate his claim of child sexual abuse, they prepared a search warrant to search for evidence of child pornography instead of evidence of child molestation. *Id.* at 287–88. Unlike *Hodson*, where the statement of probable cause contained no information whatsoever relating to the defendant engaging in any aspect of child pornography, here the affidavit relays specific allegations that Defendant made MV-1 view child pornography and created child pornography by taking photos of MV-1's genitals.

Based on the facts presented, the Court finds that the magistrate properly determined that the affidavit established probable cause to search for evidence of the alleged child assault/abuse on Defendant's computer and portable electronic devices.

### 2. The Warrant Was Sufficiently Particular In That It Supplied Enough Information To Guide And Control The Agents' Judgment In Selecting Items To Seize

Next, Defendant argues that the language of the search warrant was overbroad, and thus constituted a general search in violation of the Fourth Amendment. Dkt. No. 28, p. 9 (Pg. ID No. 67). Defendant breaks his argument down into two points: (1) that the April search warrant failed to satisfy the particularity requirement due to its use of the words "any and all"; and (2) that the April search warrant failed to satisfy the particularity requirement by not including specific language directing the search of electronic devices. *Id*. at 11–14.

Defendant relies heavily on *Riley v. California*, 134 S. Ct. 2473 (2014), even though the comparison between *Riley* and the present case seems inapposite. In *Riley*, the Supreme Court held that a warrant is generally required before searching the contents of a cell phone. 134 S. Ct. at 2493 ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search"). The present case does not involve a

warrantless search. Rather, it is undisputed that the police sought and received a warrant to search Defendant's home prior to seizing and analyzing Defendant's phone, tablet, and computers for evidence of the crimes alleged by MV-1. Accordingly, *Riley* is both factually and legally distinguishable.

### a) The Place To Be Searched Was Described With Particularity

The Fourth Amendment specifies that "the place to be searched" must be described with particularity within the warrant. *Grubbs*, 547 U.S. at 97. Defendant briefly argues in his reply brief that the warrant did not establish a sufficient nexus between the location to be searched and the alleged abuse. Dkt. No. 41, p. 7 (Pg. ID No. 153).

The Fourth Amendment does not limit places to be searched to only those locations where criminal activity actually occurred. Rather, the question is whether the affidavit supporting the search warrant demonstrated a connection between the evidence sought and the place to be searched. *United States v. Brown*, 801 F.3d 679, 686 (6th Cir. 2015). "Whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented." *Id*. at 687.

In the present case, the abuse was alleged to have occurred at the residence on Brettonwoods, where Defendant had been allowed to live in the basement. However,

after the abuse allegations surfaced, Defendant was removed from that residence and relocated to the residence on Christine Terrace. It was reasonable for the magistrate to assume, in light of the facts, that Defendant took his possessions, including computers and portable electronics, with him when he moved. Additionally, the affidavit included statements that Zupic had verified Defendant's new address with Child Protective Services and the Community Manager of Defendant's neighborhood, prior to providing a detailed description of Defendant's new residence on the first page of the affidavit.

In light of all the facts presented, the Court determines that the warrant described the places to be searched with sufficient particularity and a proper nexus to the items to be seized.

### b) The Items To Be Seized Were Described With Particularity

The Fourth Amendment also specifies that the warrant must describe "the persons or things to be seized" with particularity. *Grubbs*, 547 U.S. at 97. Defendant objects to the use of "any and all" language within the warrant, arguing that such language granted the searching officer too much discretion and converted the warrant into a general warrant. Dkt. No. 28, p. 12 (Pg. ID No. 70).

The degree of specificity required in a search warrant is flexible and varies depending on the crime alleged and items sought. *United States v. Henson*, 848 F.2d

1374, 1383 (6th Cir. 1988). "Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id*. (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985)). "In the context of searches of electronic devices, while recognizing the inherent risk that criminals can easily 'hide, mislabel, or manipulate files to conceal criminal activity,' we must also take care not to give the Government free rein to essentially do away with the particularity requirement by allowing it to examine every file on the device." *United States v. Rarick*, No. 14-4212, 2016 WL 75616, at *4 (6th Cir. Jan. 7, 2016).

The Sixth Circuit recently considered arguments similar to Defendant's in *United States v. Rarick*. *See id*. The defendant in that case objected to "the warrant's expansive language authorizing the search of 'any and all electronic data' and 'any and all communications,' and the warrant's failure to specify the date" of a video's creation during searches of the defendant's cell phone. *Id*., at *4. The Sixth Circuit affirmed the district court's denial of the motion to suppress for several reasons. *Id*.

First, the *Rarick* warrant contained portions that were specifically targeted to the "images" and "videos" that the officers had probable cause to search, although the exact folder location was unknown.[1] *Id*. at *4. Second, the officers executed the

---

[1] *Rarick* relies on *United States v. Richards*, 659 F.3d 527, 541 (6th Cir. 2011), for the holding that a search regarding a child pornography website was not overbroad where it authorized agents to search beyond the file directory on the

warrant as though overbroad portions had been excised and no evidence was offered against the defendant pursuant to those portions. *Id*. Additionally, the panel held that the failure to use a date filter before expanding the search was not unreasonable, even though the date and time of the media's creation was known, given the Sixth Circuit's approach of determining reasonableness on a case-by-case basis. *Id*. at *5.

In the present case, even less specific information was known than in *Rarick*. Whereas there an adult police officer was able to specify the exact date and time that the videos or photos sought were recorded, here the specific time period when the photos were taken is less clear. *See* Dkt. No. 28-1, p. 6 (Pg. ID No. 82) (indicating that MV-1 could not remember whether she was 7 or 8 when Defendant took naked photos of her, allegedly on Christmas). Investigators in the present case did not know the specific file locations of the videos or photos prior to executing the warrant, so consequently the warrant could not limit search to exactly those locations. Accordingly, the description used in the warrant was as specific as possible, given the circumstances and nature of the activity being investigated.

---

server that contained the evidence. 2016 WL 75616, at *4. The broad search was necessary because the agents did not know where the evidence was stored on the server, although their investigation disclosed the exact server upon which the website was hosted. *Id.*

### c) The Search Warrant Did Not Need To Include A Specific Search Methodology

Defendant also contends that the search warrant was invalid because it did not contain specific instructions to the forensic examiner about how to analyze the electronics. Dkt. No. 28, pp. 13–14 (Pg. ID No. 71–72). The relevant portion of the warrant stated that "all of the aforementioned electronics and electronic storage devices that are seized will be analyzed by a forensic examiner." Dkt. No. 28-1, p. 2 (Pg. ID No. 78).

In *United States v. Richards*, 659 F.3d 527 (6th Cir. 2011), the Sixth Circuit agreed with the Tenth Circuit's determination in *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009), that "it is folly for a search warrant to attempt to structure the mechanics of the search" and "a warrant imposing such limits would unduly restrict legitimate search objectives." *Richards*, 659 F.3d at 538. Instead of requiring the use of a specific search protocol, the Sixth Circuit applies a reasonableness analysis. *Id*. at 539. "[S]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." *Id*. at 540 (quoting *United States v. Roberts*, No. 3:08–CR–175, 2010 WL 234719, at *15 (E.D. Tenn. Jan. 14, 2010)).

In the present case, the warrant contained language that explicitly restricted the search of listed items to "[a]ny and all records or evidence of the crime of child sexual assault/abuse," *id*. at 2, a factor other courts have considered in determining the reasonableness of an electronic search. *See United States v. Otero,* 563 F.3d 1127 (10th Cir. 2009) (finding a warrant that did not limit the computer search/seizure to specific crimes to be invalid, but reversing the order to suppress under the good faith exception). Furthermore, there is no evidence that the forensic analyst searched for evidence of crimes other than those alleged by MV-1.[2] Viewing the facts as a whole, the search and analysis of Defendant's electronics did not exceed the bounds of reasonableness required by the Fourth Amendment.

**B. The Court Will Not Hold An Evidentiary Hearing On The Motion**

"An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." *United States v. Lawhorn*, 467 F. App'x 493, 495 (6th Cir. 2012) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). Defendants are not entitled to evidentiary hearings when their arguments are entirely legal in nature, such as challenges to

---

[2] Since MV-1 alleged that Defendant utilized and created child pornography during her abuse, it was reasonable for law enforcement to search for the alleged pornography to verify her allegations.

probable cause. *Id.* Because there are no factual issues in dispute with regard to Defendant's motion, the Court determines that it is unnecessary to conduct an evidentiary hearing on the motion.

## V. CONCLUSION

For the reasons stated herein, the Court will **DENY** Defendant's Motion to Suppress Evidence.

IT IS SO ORDERED.

Dated:	February 25, 2016

/s/ Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge