UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiffs,

v.

JONATHON WILLIAM-DURAND NEUHARD,

Defendant.

_____/

Case No. 15-cr-20425

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR ORDER FOR SELECT FAMILY MEMBERS TO VIEW IMAGES FOR PURPOSES OF IDENTITY INVESTIGATION [59], DENYING DEFENDANT'S MOTION FOR ORDER FOR COPIES OF CARE HOUSE VIDEOS [60], GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ORDER TO EXCLUDE EVIDENCE OF SEXUAL ASSAULTS [61], DENYING DEFENDANT'S MOTION FOR ORDER FOR FED. R. CRIM. P. 17(C) SUBPOENAS [62], GRANTING DEFENDANT'S MOTION FOR ORDER FOR WITNESS LIST [63], AND GRANTS DEFENDANT'S MOTION FOR ORDER FOR GOVERNMENT AGENTS TO RETAIN ROUGH NOTES [64]**

### I. INTRODUCTION

Defendant Jonathon Neuhard was charged in a July 9, 2015 indictment with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2); and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Dkt. No. 12, pp. 1–3 (Pg. ID No. 21–23).

-1-

On September 12, 2016, Defendant filed six motions with the Court: Motion for Order for Select Family Members to View Images for Purposes of Identity Investigation [59], Motion for Order for Copies of Care House Videos [60], Motion for Order to Exclude Evidence of Sexual Assaults [61], Motion for Order for Fed. R. Crim. P. 17(C) Subpoenas [62], Motion for Order for Witness List [63], and Motion for Order For Government Agents To Retain Rough Notes [64].

A hearing was held on the motions on November 17, 2016. Having considered the parties' briefs in support of and in opposition to Defendant's motions, as well as oral arguments at the hearing, the Court now is prepared to rule on Defendant's motions. For the reasons stated below, the Court grants in part and denies in part Defendant's motions.

## II. BACKGROUND

On March 10, 2015, an individual ("Reporting Person," or "RP") reported to the Madison Heights Police Department that Defendant had sexually assaulted her minor daughters. Dkt. No. 77, p. 2 (Pg. ID No. 307). Her daughters were ages nine (hereinafter, "Minor Victim One," or "MV-1") and seven (hereinafter "Minor Victim Two," or "MV-2"). *Id*.

Detective Sergeant Marc Zupic interviewed RP on March 11, 2015. *Id*. During the interview with Zupic, RP stated that she had left her daughters in the care of Defendant and his wife on February 20, 2015. *Id*. MV-1 later told RP that

Defendant took her to the basement, showed her pornographic movies, asked her if she was ready to have sex, and tried to put his hand down her pants. *Id*. Defendant had resided at a residence on Brettonwoods Street in Madison Heights at the time of the abuse, but he was asked to move out after MV-1 and MV-2 disclosed their abuse. *Id*. He relocated to a residence on Christine Terrace. *Id*.

A week later, on March 17, 2015, MV-1 was interviewed by a child forensic interviewer while Zupic observed from another room. *Id*. at 3. MV-1 stated that Defendant had taken her down to the basement to watch a pornographic video of a male and female engaging in oral sex and intercourse. *Id*. Defendant allegedly told MV-1 that "this is what you have to do to me" and then tried to put his hand down her pants. *Id*. MV-1 states that Defendant then took off his pants and underwear, attempted to take off her pants, and said "let me lick it," in reference to MV-1's genitals. *Id*. MV-1 further stated that she saw Defendant's penis and that Defendant began to masturbate in front of her. *Id*.

MV-1 also stated that Defendant had abused her when she was younger. *Id*. When she was eight years old, MV-1 stated that Defendant tried to put his tongue in her mouth, touched her inside her clothes, and rubbed her genitals. *Id*. MV-1 stated that Defendant tried to put his penis in her vagina and that Defendant's actions caused her pain. *Id*. Additionally, MV-1 stated that Defendant took pictures of her bare chest and genitals with his cell phone when she was seven or eight

years old. *Id*. at 4. MV-1 also stated that Defendant pushed her head down so that his penis was in her mouth, and then "white stuff came out." *Id*. MV-1 did not tell anyone because she said that Defendant raised a knife and threatened to kill her. *Id*. The alleged abuse occurred at the residence on Brettonwoods, according to MV-1. *Id*. at 2–4.

MV-2's forensic interview commenced shortly after MV-1's was completed. *Id*. at 4. MV-2 stated that when she was six years old, Defendant reached inside her underwear and put his hand inside of her genitals, causing her pain. *Id*. MV-2 stated that this incident occurred in the backyard of the residence on Brettonwoods. *Id*. Defendant allegedly held a blade and threatened to "beat the hell out of" MV-2 if she told anyone. *Id*.

On March 26, 2015, a state court magistrate judge signed a warrant that authorized the search of Defendant's current residence. *Id*. at 5. The warrant was executed on April 1, 2015, and several electronic items, including computers, tablets, and a phone, were seized. *Id*.

Forensic examination uncovered four images of child pornography on a memory card seized in the search. *Id*. The photos' metadata indicated that the photos were taken with a cell phone matching the one seized from Defendant's residence. *Id*. at 6. One image depicted a prepubescent female's vagina; two images depicted a prepubescent female's vagina with the hand of an adult

spreading the labia; and one image depicted an adult male's penis penetrating a prepubescent female's vagina. *Id*. at 5. In the photo, the child is sitting on what appeared to be a black and white zebra-striped sheet or blanket. *Id*. A blanket matching this description was visible in a dresser drawer of Defendant's home, as shown in photographs taken during the execution of the warrant. *Id*.

Additionally, examination of one of Defendant's computers resulted in the discovery of one image and two videos containing suspected child pornography. *Id*. at 6.

## III. DISCUSSION

### A. The Court Will Deny Defendant's Motion to Allow Defendant's Family Members to View Images

In Defendant's first motion, he requests the Court enter an order allowing his wife to view the images of child pornography for the purpose of "investigating the identity of the alleged perpetrator," whose hands and genitals are visible in some of the images. Dkt. No. 59, pp. 1–2 (Pg. ID No. 213–14). Additionally, Defendant would like the victim's maternal grandmother to view the images to advise defense counsel whether the child in the photographs was MV-1, Defendant's niece. *Id*.

The Government argues that this motion should be denied because federal law prohibits providing copies of child pornography images to Defendant's family and because the images are available for Defendant's counsel to view at a

Government facility. Dkt. No. 77, pp. 7–13 (Pg. ID No. 312–18). Further, the Court has already entered a stipulation and order allowing Government agents to bring the alleged child pornographic videos and images into lock-up for Defendant to view. Dkt. No. 93.

The Adam Walsh Child Protection and Safety Act of 2006 provides that "[i]n any criminal proceeding, any property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court." 18 U.S.C. § 3509(m). A court must deny "any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography," "so long as the Government makes the property or material reasonably available to the defendant." 18 U.S.C. § 3509(m)(2)(A). "Even though Criminal Rule 16(a)(1)(E) usually allows defendants to copy material documents in the government's possession, the Act requires federal courts to deny these requests when the materials contain child pornography, instead permitting the defendant only to have an 'ample opportunity for inspection, viewing, and examination at a Government facility.' " *Doe v. Boland*, 630 F.3d 491, 495 (6th Cir. 2011) (quoting 18 U.S.C. § 3509(m)(2)(B)).

In these limitations, Congress expressly restricted who many inspect, view, or examine child pornography: the "property or material shall be deemed to be reasonably available to the defendant if the Government provides ample

opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." 18 U.S.C. § 3509(m)(2)(B). Accordingly, only Defendant, his attorney, and his expert witnesses may view the images. *See id*. Because Defendant has not argued that he is seeking to qualify his wife and the victim's grandmother to furnish expert testimony at trial, the Court will not permit them to view the images.

The Court will also deny Defendant's request for the Government to produce redacted versions of the child pornography images to be viewed by his wife and the victim's grandmother. As referenced earlier, Congress has prohibited the Court from allowing duplication or reproduction of material that constitutes child pornography, so long as such material is reasonably available to the defendant. 18 U.S.C. § 3509(m)(2)(A).

Defendant argues, citing to *United States v. Stewart*, 729 F.3d 517, 528 (6th Cir. 2013), that since a defendant could transform a non-pornographic image of a child into child pornography by cropping, the Government could redact an image that does constitute child pornography in such a way that it would no longer meet that definition. The Court is unpersuaded. In *Stewart*, original photos of naked children playing on a beach were cropped and brightened with photo-editing software such that the edited product focused solely on the children's genitalia. 729

F.3d at 522. In the present case, the original photos focused solely on the minor female's genitalia, an adult hand spreading the minor female's labia, and an adult male's penis penetrating the minor female's labia. There is no means of uncropping the images, such that the photographs would no longer qualify as child pornography, like the original images in *Stewart*.

Consequently, the Court will not order the Government to transform child pornography into general pornography, focusing solely on the perpetrator's penis or hands spreading a minor's labia, through some exercise in creative redaction. Denying Defendant such a remedy is consistent with 18 U.S.C. § 3509(m), Defendant's constitutional rights, and existing case law. *See Doe v. Boland*, 630 F.3d 491, 496 (6th Cir. 2011) ("Nor do reasonable limits on defense counsel's access to the child pornography at issue in a criminal case, whether old or new, raise constitutional concerns."); *United States v. Healey*, 860 F. Supp. 2d 262, 271 (S.D.N.Y. 2012) (noting that "the Government is not required to create a document to respond to a defense request for discovery" in a child pornography case); *United States v. Cameron*, 672 F. Supp. 2d 133, 141 (D. Me. 2009), *amended* (Nov. 30, 2009) (finding the government did not have an obligation to remove child pornography and produce the non-illicit photos from album). This motion is DENIED.

**B.  The Court Will Deny Defendant's Motion for Copies of Care House Videos**

In his second motion, Defendant seeks copies of the videos of the minor victims being interviewed at the Oakland County CARE House for review by himself, his counsel, and experts hired by his counsel. Dkt. No. 60. He argues that it would be very burdensome for his counsel to transport him to a government facility every time he wanted to review the videos. *Id*. at 4. Additionally, he argues that it would be more costly for his expert to travel to Detroit each time he wanted to review the videos. *Id*.

The Government does not dispute that the videos may contain prior statements that will be considered *Jencks* material, once the minor victims testify on direct examination at trial. Dkt. No. 78, p. 2 (Pg. ID No. 321). *See also* 18 U.S.C. § 3500(a) ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness . . . (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). Further, the Government states that it has already made those interviews available to defense counsel and will provide transcripts of the interviews to the defense as soon as they are available, no later than two weeks before trial. *Id*. at 3.

The Court concludes that the Government's solutions—i.e., allowing defense counsel to view the videos at a government facility and providing transcripts of the interviews at least two weeks prior to trial—satisfies the Government's obligations. Consequently, this motion is DENIED.

## C. The Court Will Grant In Part And Deny In Part Defendant's Motion to Exclude Evidence of Sexual Assaults

Defendant's third motion seeks to exclude evidence of the prior sexual assaults, specifically those against MV-1 and MV-2 that were unrelated to the production or possession of child pornography, relying on Federal Rules of Evidence 401 and 402. Dkt. No. 61, p. 1 (Pg. ID No. 227). Should the minor victims testify, "Defendant reserves the right to file a motion requesting an independent medical and psychological examination of the minor children." *Id*. at 2.

The Government argues that such evidence should be admitted under Federal Rules of Evidence 413 and 414, and additionally seeks to admit evidence of Defendant's prior HYTA adjudication for forcible rape in 2006. *See* Dkt. No. 79, pp. 3–4 (Pg. ID No. 326–27).

The Government intends to present testimony from MV-1 about several instances where Defendant allegedly molested her, including times other than when the child pornography photographs were taken. *Id*. at 2–3. Specifically, MV-

-10-

1 stated in her forensic interview that Defendant took her to the basement, showed her a pornographic movie and touched her vagina with his hand. *Id*. at 2. Additionally, MV-1 has stated that when she was eight years old, Defendant tried to put his tongue in her mouth, he touched her inside of her clothes, and he rubbed her genitals in the basement of the home on Brettonwoods. *Id*. at 2–3. That same day, Defendant allegedly tried to put his penis inside of MV-1's vagina. *Id*. at 3.

The Government also intends to present testimony from MV-2. MV-2 has stated that, when she was six years old, Defendant put his hand underneath her underwear and in her vagina when the two were in the yard at the Brettonwoods home. *Id*. Additionally, MV-2 stated that Defendant held a blade and told MV-2 that if she told anyone about what he did, he would beat the hell out of her. *Id*.

In addition to the evidence that Defendant sexually assaulted MV-1 and MV-2 at times other than when the child pornography images were created, the Government also seeks to admit evidence related to Defendant's prior conviction for criminal sexual conduct in the third degree, relating to his forcible rape of a 15-year-old classmate in 2006. *Id*. at 3, n.3. At the time of the offense, Defendant was 17 years old and his guilty plea was adjudicated under the Holmes Youthful Trainee Act (HYTA). *Id*.

Under Rules 413 and 414, the Court will engage in a three-step analysis. First, the Court will determine whether Defendant's charged offenses qualify as

being accused of "sexual assault," FED. R. EVID. 413, or "child molestation," FED. R. EVID. 414. Second, the Court will examine whether the evidence of other conduct qualifies as "sexual assault," FED. R. EVID. 413, or "child molestation," FED. R. EVID. 414. Should the other evidence qualify under Rules 413 and 414, the Court will engage in Rule 403 balancing and examine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

### 1.  Admissibility of Evidence Under Rules 413 and 414

Rule 413 provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault." FED. R. EVID. 413(a). The evidence of other sexual assaults "may be considered on any matter to which it is relevant." *Id.* "Sexual Assault" is defined as "a crime under federal law or under state law" involving:

(1) any conduct prohibited by 18 U.S.C. chapter 109A;

(2)  contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus;

(3) contact, without consent, between the defendant's genitals or anus and any part of another person's body; . . . .

-12-

FED. R. EVID. 413(d)(1–3). Evidence that is admissible under Rule 413 is still subject to the Rule 403 balancing test. *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006).

Rule 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" "on any matter to which it is relevant." FED. R. EVID. 414(a). Rule 414 defines a child as a person below the age of 14. FED. R. EVID. 414(d)(1). "Child molestation" is defined as "a crime under federal law or under state law" that involves:

> (A) any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
>
> (B) any conduct prohibited by 18 U.S.C. chapter 110;
>
> (C) contact between any part of the defendant's body—or an object— and a child's genitals or anus;
>
> (D) contact between the defendant's genitals or anus and any part of a child's body; . . . .

Fed. R. Evid. 414(d)(2).

### a.  Whether Defendant Is Currently Accused of Sexual Assault or Child Molestation

The crimes that Defendant has been charged with arise under 18 U.S.C. chapter 110: production, receipt, and possession of child pornography. The

Government argues that the current charge of production of child pornography meets the definition of "sexual assault" under Federal Rule of Evidence 413(d)(2), because it involves "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus."

The Sixth Circuit has found that a propensity to sexually abuse a child does not directly translate to a propensity to possess and receive child pornography. *United States v. Hough*, 385 F. App'x 535, 537 (6th Cir. 2010). However, this distinction was at least partially premised on the fact that the charged acts did not involve physical contact. *Id*. The Sixth Circuit subsequently distinguished between cases where only receipt was charged, as opposed to cases where the defendant was charged with *producing* child pornography. *United States v. Sanchez*, 440 F. App'x 436, 439 (6th Cir. 2011) (finding that the crime of production of child pornography is sufficiently similar to a rape or child assault charge to have probative value).

Two of the photographs included in the charge of production of child pornography depict an adult's body having contact with the genitals of a minor female, who would be legally incapable of providing valid consent given her age. In one photograph, an adult's hands are depicted spreading the labia of a minor female. In another photograph, an adult male's penis is depicted penetrating a minor female's vagina. Accordingly, both of these images depict conduct that falls

-14-

squarely within the definition of "sexual assault" under Rule 413(d)(2). Thus, this case qualifies as a criminal case in which a defendant is accused of sexual assault, such that the Court may admit evidence that the defendant committed any other sexual assault. *See* FED. R. EVID. 413(a).

The Sixth Circuit has held that "[c]hild molestation includes both conduct proscribed in Chapter 109A of Title 18, if committed against a child, and offenses involving child pornography." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006). *See also United States v. Trepanier*, 576 F. App'x 531, 534 (6th Cir. 2014). Accordingly, Defendant's charged offenses of production, receipt, and possession of child pornography qualify an offence constituting "child molestation" under Rule 414.

### b. Whether The Other Evidence Qualifies As Sexual Assault or Child Molestation

Next, the Court must assess whether Defendant's prior offenses qualify as "sexual assault," as defined by Rule 413, or "child molestation, as defined by Rule 414.

Under Rule 413, the Court may admit evidence of prior sexual assaults committed against both adults and minors. *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006) ("Rule 413, standing alone, is thus broad enough to permit evidence of prior sexual offenses against adults in a case of child molestation."). As detailed above, Rule 413 defines "sexual assault" as conduct including

-15-

nonconsensual contact between any part of the defendant's body and another person's genitals, as well as nonconsensual contact between the defendant's genitals any part of another person's body. FED. R. EVID. 413(d)(2–3). Rule 414 similarly defines "child molestation" as "contact between any part of the defendant's body—or an object—and a child's genitals or anus" where that child is under the age of 14. FED. R. EVID. 414(d)(2)(C).

MV-1 seeks to testify about several different instances of Defendant's conduct. First, when MV-1 was nine years old, she disclosed an instance where Defendant took her to the basement, showed her a pornographic movie and touched her vagina with his hand. Such conduct falls within the definition of "sexual assault" under Rule 413 and "child molestation" under Rule 414, and would be admissible, pending Rule 403 balancing. *See* FED. R. EVID. 413(d)(2); FED. R. EVID. 414(d)(2)(C). Next, MV-1 stated that when she was eight years old, Defendant tried to put his tongue in her mouth, he touched her inside of her clothes, and he rubbed her genitals. Such conduct also falls within the definition of "sexual assault" under Rule 413 and "child molestation" under Rule 414, and would be admissible, pending Rule 403 balancing. *See* FED. R. EVID. 413(d)(2); FED. R. EVID. 414(d)(2)(C). MV-1 also disclosed that, on the same day as the previous instance, Defendant tried to put his penis inside of MV-1's vagina. Such conduct falls within two categories of the definition of "sexual assault" under Rule

413 and "child molestation" under Rule 414, and would be admissible, pending Rule 403 balancing. *See* FED. R. EVID. 413(d)(2–3); FED. R. EVID. 414(d)(2)(C–D).

MV-2's testimony relates to when Defendant allegedly put his hand underneath her underwear and in her vagina when she was six years old. Such conduct falls within the definition of "sexual assault" under Rule 413 and "child molestation" under Rule 414, and would be admissible, pending Rule 403 balancing. *See* FED. R. EVID. 413(d)(2); FED. R. EVID. 414(d)(2)(C).

The last instance of testimony involves Defendant's guilty plea to Criminal Sexual Conduct, Third Degree, for penis-vagina intercourse with a 15-year-old female victim without her consent. Such conduct falls within two categories of the definition of "sexual assault" under Rule 413, and would be admissible, pending Rule 403 balancing. *See* FED. R. EVID. 413(d)(2–3). Evidence related to the 2006 rape adjudication would not be admissible under Rule 414 because the victim was 15 years old, and not "a person below the age of 14." *See* FED. R. EVID. 414(d)(1).

### c. Rule 403 Balancing

Finally, after determining that the all evidence the Government seeks to admit qualifies under Rule 413, and some qualifies under Rule 414, the Court must determine whether the danger of unfair prejudice substantially outweighs the probative value.

Rules 413 and 414 create an exception to the general ban on propensity evidence for cases charging a defendant with crimes of sexual violence. *Seymour*, 468 F.3d at 385. Other circuits that considered the legislative history of Rule 413 have noted that "[w]ithout probative evidence of prior sexual assaults, credibility determinations . . . would otherwise become unresolved swearing matches." *United States v. Strong*, 826 F.3d 1109, 1113 (8th Cir. 2016) (quoting *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998); 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)) (internal quotation marks omitted). This is a particular concern in cases involving sexual assault of juvenile victims, which "often raise unique questions regarding the credibility of the victims" and "render a defendant's prior conduct especially probative." *United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005). Thus, Rule 413 has been interpreted as a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *United States v. Crawford*, 413 F.3d 873, 876 (8th Cir. 2005) (quoting *United States v. LeCompte,* 131 F.3d 767, 769 (8th Cir. 1997)); *see Julian*, 427 F.3d at 486 ("Congress intended to include the defendant's propensity to engage in the offense of sexual assault with which he has been charged.").

"Rule 403, which balances the probative value of relevant evidence against the 'danger of unfair prejudice, confusion of the issues, or misleading the jury,' applies to evidence that would be otherwise admissible under either [Rule 413 or

414].” *Seymour*, 468 F.3d at 385 (quoting FED. R. EVID. 403). There are several factors that courts have found relevant in weighing the probative value of evidence against the danger of unfair prejudice. These three factors, when present, enhance the probative value of evidence: (1) closeness in time of the prior acts to the current charges; (2) similarity between prior offenses and the charged offense; and (3) the frequency of the prior acts. *Id.* at 385–86. Accordingly, if the evidence of the sexual assaults is to be admitted, the probative value of the assaults must not be substantially outweighed by the danger of unfair prejudice.

The Court must distinguish between prejudice that is unfair and prejudice that is fair. *United States v. Sims*, 708 F.3d 832, 835–36 (6th Cir. 2013). “Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403.” *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). Conversely, inflammatory details that have little, if any, probative value to the elements of the charged offenses can be considered unfairly prejudicial. *Sims*, 708 F.3d at 836.

### i. Probative Value of Evidence of Prior Sexual Assaults and Molestations

The Sixth Circuit has stated that “[t]he greater the similarity of the prior acts to the charged offense, the greater the probative value.” *United States v. Trepanier*, 576 F. App’x at 534. In this case, the prior instances of child molestation and sexual assault alleged by MV-1 and MV-2 are extremely similar to

the molestation and assault depicted in the photographs upon which the production charge is premised.

Looking first at the instances of sexual assault and molestation alleged by MV-1, there are many factors that enhance the probative value of this testimony. MV-1 was the subject of the photographs of child pornography that Defendant allegedly produced, and intends to testify about other instances where Defendant sexually assaulted her. *See* Dkt. No. 77, pp. 2–5 (Pg. ID No. 307–10). MV-1 has stated that Defendant sexually assaulted her on multiple occasions when she was 7 or 8 years old, including when he took photographs of the assault. *Id.* At the hearing, the Government stated that MV-1 is now 11 years old. Accordingly, the closeness in time between the sexual assaults and charged offenses enhances its probative value. Additionally, there is significant similarity between the prior offenses and those charged in the present case. In each of the incidents, Defendant allegedly touched MV-1's genitals with his hands or penis. *See* Dkt. No. 77, pp. 2–5 (Pg. ID No. 307–10). The photographs display both of those offenses. Finally, MV-1 has provided allegations regarding multiple instances of assault, rather than a single, isolated occurrence. *See id.* The frequency factor is also indicative of probative value. Accordingly, the Court finds that the prior assaults on MV-1 are of high probative value and can only be excluded if a Rule 403 concern *substantially* outweighs this value.

Similarly, the instance alleged by MV-2 is also probative of the charged offense of production of child pornography. MV-2 stated that Defendant sexually assaulted her in the same residence where MV-1 was allegedly abused and where the child pornography photographs were produced. *See* Dkt. No. 77, pp. 2–4 (Pg. ID No. 307–09). The conduct MV-2 alleges is the same conduct shown in some of the photographs: adult hands touching a minor female's genitals. *Id*. at 4. The victim in the production charge is a young female, as is MV-2. MV-2 was 6 years old at the time of the sexual assault, whereas the victim in the charged offenses, MV-1, was believed to be 7 or 8 years old at the time the photographs were taken. *Id*. at 2–4. The sexual assault alleged by MV-2 is proximate in time to the period in which the photographs were taken, further enhancing probability. *See id*. at 4. Additionally, MV-2 and MV-1 were both part of Defendant's extended family and were both threatened by Defendant with knives or blades if they disclosed the abuse. *Id*. Such similarity between MV-2 and MV-1 enhances the probative nature of MV-2's testimony, given MV-1 is the victim in the production charge. The only factor that weighs against probative value is that MV-2's assault was a single occurrence; however, the high probative value remains based on the other factors.

Furthermore, because it appears that Defendant intends to dispute the veracity of the children's accounts, the consistency and similarity between their assaults aids in bolstering MV-1's credibility. The evidence of MV-1's and MV-

2's assaults also goes to Defendant's motive, establishing his sexual interest in children. *See United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009) (explaining in the context of Rule 413 that, "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children.")

Whether Defendant's 2006 adjudication for forcible rape of a classmate is admissible is a closer call. Here, the sexual assault occurred nearly ten years before Defendant was charged with production of child pornography in 2015 and seven years before the pornography was produced. *See* Dkt. No. 79, p. 13 (Pg. ID No. 336). The rape victim was also female, and the assault involved Defendant penetrating the victim's vagina with his penis, similar to the assault depicted in one of the child pornography photographs. However, the victim was 15 years old—seven to nine years older than both MV-1 and MV-2—and was not a member of Defendant's extended family like the other victims. The rape is the only instance of sexual assault not alleged to have occurred in the house on Brettonwoods Street. It is not alleged that Defendant took any photographs during his rape of his classmate, or that he threatened her with a weapon like the other assaults. From what the Government details of Defendant's rape adjudication, it appears to have been a single assault, rather than a series of rapes of his classmate. Weighing all

the different factors, there is modest probative value to admitting Defendant's 2006 juvenile rape adjudication.

      *ii. Danger of Unfair Prejudice or Needlessly Cumulative Testimony in Admitting Evidence of Prior Sexual Assaults and Molestations*

Defendant was charged with an offense involving sexual assault and child molestation—hands-on production of child pornography under 18 U.S.C. chapter 110—and the evidence that the Government seeks to admit is evidence of an offense involving sexual assault and child molestation—contact between Defendant's body and MV-1's and MV-2's genitals when they were 7–8 years old and 6 years old, respectively. Evidence of Defendant's sexual assaults of MV-1 and MV-2 are prejudicial to Defendant for the same reason that they are probative: they tend to prove his propensity to sexually assault MV-1 in the same way that the child pornography photographs illustrate.

Under Rule 413, which makes propensity evidence admissible in crimes of sexual assault, the potential prejudice caused by the admission of these assaults is fair. Accordingly, the Court finds that the probative value of admitting Defendant's sexual assaults of MV-1 and MV-2 is not substantially outweighed by the danger of unfair prejudice. *See, e.g.*, *United States v. Foley*, 740 F.3d 1079, 1087–88 (7th Cir. 2014) (finding a minor's testimony about his past molestation was relevant to prove a defendant's propensity to produce child pornography and did not cause

undue prejudice). The Court will further mitigate the risk of undue prejudice from admission of the assaults by providing a limiting instruction to the jury.

Additionally, the Sixth Circuit has "note[d] that nearly all evidence admissible under Rule 414 will be highly prejudicial." *Sanchez*, 440 F. App'x at 439. Such a danger of prejudice is presented by all evidence suggesting a propensity to engage in child sexual abuse. *Id.* at 439–40. "If Rule 403 could be employed so easily to keep out instances of child molesting, Rule 414 would be effectively gutted." *Id.* at 440. Considering Congress's intent to overrule categorical exclusions on this kind of propensity evidence through the enactment of Rule 414, as well as the similarity of the molestations and charged offenses, the Court finds that the although the molestations are highly prejudicial, much of that prejudice is fair. *See United States v. Deuman*, 568 F. App'x 414, 421 (6th Cir.), *cert. denied*, 135 S. Ct. 295, (2014). Because the danger of unfair prejudice does not substantially outweigh the probative value of the evidence, the evidence of MV-1's and MV-2's molestations is also admissible under Rule 414.

Defendant's forcible rape of his 15-year-old classmate is more likely to be unfairly prejudicial, in light of the charged offenses. Although sexual offenses against adults or teenagers may be admissible in a case of child molestation, *see Seymour*, 468 F.3d at 385, this assault is not as similar to the charged offenses as MV-1's and MV-2's assaults. The fact that Defendant has previously pled guilty to

-24-

rape in a juvenile adjudication could be considered facially inflammatory. This adjudication could also unduly divert attention from the issues of the present case, which specifically involves production of child pornography depicting a prepubescent female. The Court finds that admission of Defendant's previous rape adjudication of a teenage classmate could cause a jury to render a decision based on improper considerations, and that danger of unfair prejudice outweighs the modest probative value of this evidence. Evidence of the rape adjudication will be excluded.

Accordingly, the Court DENIES Defendant's motion as to evidence of MV-1's and MV-2's assaults, and GRANTS the motion as to evidence of Defendant's 2006 adjudication for forcible rape of his 15 year old classmate.

## D. The Court Will Deny Defendant's Motion for FED. R. CRIM. P. 17(c) Subpoenas

In his fourth motion, Defendant seeks access to "all the school records, school counseling records, child protective services records, medical records, and psychological and therapy records of [MV-1 and MV-2], and the child protective services records of Defendant's son." Dkt. No. 62, p. 1 (Pg. ID No. 232). Defendant further argues that he needs "all of these records in order to adequately cross-examine the minor children at trial." *Id.* at 2. He seeks a court order allowing

him to subpoena all of these records pursuant to Federal Rule of Criminal Procedure 17(c). *Id.*

The Government opposes this motion for multiple reasons. First, the Government asserts that they have already produced the child protective services and medical records related to MV-1 and MV-2. Dkt. No. 80, pp. 1–2 (Pg. ID No. 340–41). Second, the Government argues that Defendant has not made a showing for why the school records, school counseling records, and any psychological records should be produced, and additionally that those documents are privileged. *Id.* at 2. Lastly, the Government maintains that they do not have custody or control of the interviews of Defendant's son, which the Government asserts are not relevant to the present case. *Id.*

Federal Rule of Criminal Procedure 17(c)(3) allows a defendant to request "a subpoena requiring the production of personal or confidential information about a victim," which "may be served on a third party only by court order." A party seeking to obtain records by means of a 17(c) subpoena must show that the information being sought is relevant, admissible, and specific. *United States v. Hughes*, 895 F.2d 1135, 1145–46 (6th Cir. 1990). In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court held that production pursuant to Rule 17(c) is appropriate where the movant shows:

(1) the documents are evidentiary and relevant;

(2) they are not otherwise procurable, with due diligence, in advance of trial;

(3) the party cannot properly prepare for trial without such production and inspection in advance of trial; and

(4) the application was made in good faith and is not a fishing expedition.

*Id*. at 699.

Defense counsel claims to have "a good-faith belief, grounded in articulable facts, that there is a reasonable probability that the records of the complainants are likely to contain information necessary to the defense." Dkt. No. 62, p. 5 (Pg. ID No. 236). However, defense counsel never shares those facts with the Court. He does not identify specific, admissible, and relevant facts contained in any of the records being sought. Defense counsel similarly does not detail how such records are necessary to the defense. Instead, defense counsel argues that the minor victims somehow fabricated their allegations, notwithstanding the physical evidence that supports their claims. Therefore, according to defense counsel, any records that may or may not exist will be useful in cross-examination.

Defendant's primary argument is that he is entitled to such records under the Confrontation Clause. The Court finds this Sixth Amendment argument to be unavailing. *See Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir.), *cert. denied*, 135 S. Ct. 876 (2014) ("But both we and the Supreme Court have observed that a trial court's denial of a defendant's request to access potential impeachment evidence does not necessarily violate a defendant's confrontation rights.").

According to clearly established Supreme Court precedent, a criminal defendant does not have an unassailable right to discover and use confidential or privileged information to impeach a witness in advance of trial. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 53–54 (1987). In *Ritchie*, a plurality held that a defendant's right to be confronted with witnesses against him was not violated when a child protective service agency refused to turn over its confidential records to him, because those records were privileged under state law. *Id*. at 43–46. The *Richie* plurality determined that "the right to confrontation is a trial right" and declined "to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery." *Id*. at 52. In so finding, they stated that "[t]he ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id*. at 53.

Under Michigan state law, MICH. COMP. LAWS § 600.2165, teachers and administrators are not to disclose student records "in any proceedings, civil or criminal," unless consent has been provided by a minor's parent or legal guardian. Limited discovery may be permitted, subject to additional restrictions, "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in

camera inspection of the records." MICH. CT. R. 6.201(C)(2). As stated above, defense counsel has not provided the Court with any facts that support a reasonable probability that the records contain necessary information. Until such information is provided, the minor victims' school records are conditionally privileged.

Additionally, confidential communications between a psychotherapist and his or her patient are protected at the federal level. *See Jaffee v. Redmond*, 518 U.S. 1, 9–10 (1996). However, at this point in time, it does not appear that there is clearly established federal law that answers whether a victim's psychotherapist-patient privilege must yield to a criminal defendant's desire to use such confidential information in his defense. *See Batey v. Haas*, No. 05-CV-73699-DT, 2013 WL 1810762, at *10 (E.D. Mich. Apr. 30, 2013), *aff'd*, 573 F. App'x 590 (6th Cir. 2014) (citing *Johnson v. Norris*, 537 F.3d 840, 845–47 (8th Cir. 2008)). Although some district courts have admitted psychotherapist records when a defendant articulated specific facts pertaining to the high probative value of the records, those are not the facts before this Court. *See, e.g.*, *United States v. Castillo*, No. 16-CR-20344, 2016 WL 4761777, at *2–3 (E.D. Mich. Sept. 13, 2016) (ordering a victim's psychological record be produced to the court for in camera review, where the defendant provided information about the sole witness's medical history that was potentially exculpatory). Since Defendant has provided specific, relevant, and admissible information about what the minor victims'

psychological records contain that is exculpatory, the Court does not find that in camera review of these records is called for at this time.

Finally, the Court finds that it is unnecessary for it to issue a subpoena for the child protective services records of Defendant's son. Defendant's son is not alleged to be a victim or witness in the present case. Moreover, as a parent of the child investigated and the person suspected of abusing the child, Defendant already has a right to access his son's child protective services record. *See Access to CPS Information*, MICH. OFF. CHILD. OMBUDSMAN, http://www.michigan.gov/oco/ 0,4647,7-133--362861--,00.html (last visited Nov. 7, 2016). Defendant or his wife may provide a written request for the records, along with a form of personal identification, to their local Department of Health & Human Services office to receive their son's records. Since Defendant and his wife are able to freely request their son's records without a subpoena, the Court declines to order these records be produced. Consequently, this motion is DENIED.

## E. The Court Grants Defendant's Motion for Witness List

In his fifth motion, Defendant requests that the Court order that the Government provide him with a witness list at least 14 days prior to trial. Dkt. No. 63, p. 1 (Pg. ID No. 240). Defendant argues that he needs this list sufficiently in advance of trial so that he may effectively prepare to cross-examine and impeach the Government's witnesses, and so that he may investigate and subpoena

witnesses for trial to rebut testimony or impeach credibility of the Government's witnesses. *Id*. The Government opposes Defendant's motion, but has offered to provide its witness list seven days before trial. *See* Dkt. No. 81, p. 4 (Pg. ID No. 357).

Defendant cites to *United States v. Kendricks*, 623 F.2d 1165 (6th Cir. 1980), in which the Sixth Circuit stated, "[i]t is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right, although the district court has discretion to order the prosecution to produce it." *Id*. at 1168. Although *Kendricks* does not strongly support Defendant's request that the Government provide its witness list fourteen days before trial, this Court's Criminal Scheduling Order does support that timeline.

The template Criminal Scheduling Order for this Court states:

> THE DEADLINE FOR SUBMITTING WITNESS LISTS, PROPOSED VOIR DIRE, PROPOSED JURY INSTRUCTIONS and the PROPOSED VERDICT FORM will be *two weeks prior to trial*, unless the Court orders otherwise. These documents are to be sent directly to Judge Drain's chambers. They are NOT to be electronically filed or otherwise submitted to the Clerk's Office.

https://www.mied.uscourts.gov/pdffiles/DrainCriminalSchedulingOrder.pdf, p. 2 (emphasis added). Accordingly, Defendant's request to receive the Government's witness list at least fourteen days prior to trial is in conformance with the Court's practice guidelines. Defendant should note that this early witness list exchange is not unilateral. Defendant's witness list is also due fourteen days prior to trial, and

he is to have included all the witnesses he anticipates calling—rebuttal or otherwise—on his witness list by that deadline.

The Court GRANTS this motion and orders both Defendant and the Government to submit and exchange witness lists fourteen days prior to trial.

## F.  Motion for Government Agents To Retain Rough Notes

In Defendant's sixth and final motion, he seeks a court order to require any and all Government agents and law enforcement officers to preserve and retain rough notes. Dkt. No. 64, p. 1 (Pg. ID No. 245). The Government does not oppose this motion and states that it has already reminded state and federal law enforcement agents to retain these notes. Dkt. No. 82, p. 1 (Pg. ID No. 359). The Government also asserts that, although these notes are being retained, they are not discoverable in accordance with the Jencks Act, as Defendant appears to claim. *Id*. at 2.

Sixth Circuit precedent supports the Government's argument that rough notes are typically not discoverable. *See United States v. Stephens*, 492 F.2d 1367, 1377 (6th Cir. 1974) ("The Jencks Act applies to a 'substantially verbatim recital' of an oral statement by a witness and does not apply to an officer's rough notes."). However, a government agent's rough notes taken during witness interviews may be discoverable per the Jencks Act if "(1) the notes were read back to and verified by the witnesses and (2) the reports summarized the notes without material

-32-

variation." *United States v. Chitwood*, 457 F.2d 676, 678 (6th Cir. 1972) (citing *Campbell v. United States*, 373 U.S. 487, 492, 495 (1963)). Unless those conditions are satisfied, the rough notes being retained by the Government and its agents are not discoverable under the Jencks Act.

Thus, the Court GRANTS this motion.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's Motion For Order For Select Family Members To View Images For Purposes Of Identity Investigation [59]; **DENIES** Defendant's Motion For Order For Copies Of Care House Videos [60], **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion For Order To Exclude Evidence Of Sexual Assaults [61]; **DENIES** Defendant's Motion For Order For FED. R. CRIM. P. 17(C) Subpoenas [62]; **GRANTS** Defendant's Motion For Order For Witness List [63]; and **GRANTS** Defendant's Motion For Order For Government Agents To Retain Rough Notes [64].

IT IS SO ORDERED.

Dated:        November 22, 2016

                                              /s/Gershwin A Drain
                                              HON. GERSHWIN A. DRAIN
                                              United States District Court Judge

-33-