UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

JONATHON NEUHARD,

        Defendant.

_____/

Case No. 15-cr-20425

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO VACATE SENTENCE (ECF No. 175)

### I.   INTRODUCTION

On March 17, 2017, Defendant Jonathon Neuhard was convicted, after a jury trial, of production, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2251(a) (Count One), 18 U.S.C. § 2252A(a)(2) (Count Two), and 18 U.S.C. § 2252A(5)(B) (Count Three), respectively.  ECF No. 117.  He was sentenced to 420 months on Count One, 240 months on Count Two, and 120 months on Count Three, to run concurrently for a total sentence of 35 years.  ECF No. 165, PageID.1620.  Neuhard's convictions and sentences were affirmed on direct appeal by the Sixth Circuit.  *United States v. Neuhard*, 770 Fed. App'x 251 (6th Cir. 2019).  His petition

1

for a writ of certiorari was subsequently denied by the United States Supreme Court

on November 25, 2019. *Neuhard v. United States*, 140 S. Ct. 570 (2019).

Presently before the Court is Defendant's Motion to Vacate Pursuant to 28

U.S.C. § 2255.  ECF No. 175.  The Motion is fully briefed, *see* ECF Nos. 184, 190,

and the Court held an evidentiary hearing on the Motion on May 13 and 26, 2022.

For the following reasons, the Court will **GRANT IN PART AND DENY IN

PART** Neuhard's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 175).

## II.   BACKGROUND

### A. Factual & Procedural Background

In March 2015, Neuhard's nieces, MV-1 (then nine years old) and MV-2 (then

seven years old), told their mother that Neuhard had sexually assaulted them at their

grandmother's house.  ECF No. 34-1, PageID.117-18.  Their mother reported the

abuse to the police, and an investigation ensued.  *See* ECF No. 34-1.  A forensics

examination of Neuhard's tablet revealed that four photographs of an adult male

performing sexual acts on MV-1 had been deleted from the SD card.  ECF No. 125,

PageID.851-54.  Metadata indicated that the photographs had been taken at the

victims' grandmother's house in January 2014.  *Id.* at PageID.847-54.  Neuhard's

laptop also contained two child-pornography videos that had been downloaded from

2

the internet.  ECF No. 126, PageID.906-07.  Neuhard was ultimately arrested by Homeland Security Investigations Agent Lisa Keith.  ECF No. 126, PageID.970.

A grand jury charged Neuhard in a three-count indictment with production of child pornography (the photos of MV-1) and receiving and possessing child pornography (the videos from the internet) in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2), and 2252A(5)(B).  *See* ECF No. 12.  A jury trial commenced on March 15, 2017, and testimony lasted two and a half days.

During the trial, Sergeant Marc Zupic, who conducted the search of Neuhard's residence, testified that Nehard was "reserved, unemotional[,] [and] [s]hort with his answers" when Sergeant Zupic interviewed him.  ECF No. 125, PageID.841. Sergeant Zupic went on to describe Neuhard's behavior during their second conversation, which occurred at the police station, as "robotic."  *Id.* at PageID.842. Recordings of this second interview were also played for the jury.  *Id.* at PageID.842-47.

MV-1 testified that Neuhard molested her while showing her pornographic videos on more than one occasion.  ECF No. 123, PageID.627-31, PageID.633-35. She also testified that he took pictures of her genitals with his phone and confirmed that the four photographs recovered from the tablet depicted her and Neuhard.  *Id*. at PageID.635-38.  One of these photographs depicted Neuhard's genitalia as well.  *See*

3

ECF No. 125, PageID.847-854.  According to MV-1, the abuse occurred at her grandmother's (Neuhard's mother-in-law's) house, where Neuhard lived at the time. ECF No. 123, PageID.627-36.

The defense theory was that one of the several other men who had lived in the house over time and had access to Neuhard's electronic devices took the photographs and downloaded the videos.  ECF No. 125, PageID.822-23.  Debra Razzaq, Neuhard's mother-in-law and the victims' grandmother, testified that in addition to Neuhard and his family, Justin Cinquemani, Cody Cinquemani, and Sanchez Fernandez lived in her house during 2012 and 2013.  ECF No. 127, PageID.1055-60.  Razzaq also testified that she hired Forest McNiff to remodel her basement.  *Id.* at PageID.1061.  She further testified that the other people living in the house had access to Neuhard's phone and tablet and that Fernandez used Neuhard's phone frequently.  *Id.* at PageID.1063-65.

Agent Keith testified that, during her investigation, she had interviewed other men who had a significant presence at Debra Razzaq's residence, including Sanchez Fernandez, Rustam Razzaq (Debra Razzaq's son and the victims' uncle), and Forest McNiff.  ECF No. 126, PageID.979-80.  When asked about their attitudes and demeanor during questioning, Agent Keith responded that the men were "cooperative, helpful, offered to take lie detector tests, [and] allowed [her] to take

4

photographs of their hands, their fingers, their thumbs." *Id.* at PageID.981. Trial counsel, Attorney Korn, requested a sidebar and objected to the testimony. *Id.* He asked that the Court cure the error by allowing him to introduce evidence, through Sergeant Zupic, that Neuhard offered to take a government polygraph during his interrogation. *Id.* The prosecutor objected because Neuhard ultimately withdrew the offer; instead, she proposed the Court strike the testimony and give a curative instruction. *Id.* at PageID.982-83. Ultimately, this Court struck the inadmissible testimony regarding the three men offering to take polygraphs and instructed the jury not to consider it. *Id.* at PageID.984-85.

After the Government rested, Neuhard moved for a new trial. Attorney Korn explained that "the import of everything [he had] done during the trial was that there were other people living in this house who could have perpetrated the abuse and they could have taken those pictures." *Id.* at PageID.1019. Thus, Agent Keith's statement about the other men offering take polygraphs was "very damaging" to the defense, and "there's no way that an instruction could make [the jury] forget that they hear[d] that." *Id.* at PageID.1020. Trial counsel therefore asked the Court to grant a new trial "under these circumstances." *Id.*

Attorney Korn went on to request that, if the Court was disinclined to grant his motion, that it allow Neuhard to introduce evidence that he offered to take a

5

polygraph during his interview with Sergeant Zupic to "balance the equation." *Id.* at PageID.1022-23. The Court denied the motion without prejudice, *id.* at PageID.1023-24, but Neuhard never filed a renewed motion despite being given an extension of time in which to do so, ECF No. 122. The Court also denied trial counsel's request to introduce evidence of Neuhard's offer to take a polygraph so as not to introduce additional errors into the trial. *Id.* at PageID.1025.

The jury convicted Neuhard on all counts, ECF No. 117, and judgment entered on November 22, 2017, ECF No. 145. Neuhard timely appealed that judgment. ECF No. 147. However, after briefing by the parties, the Court later entered an order requiring Neuhard to pay $40,356 in restitution. *See* ECF No. 163. Neuhard did not appeal this order.

On appeal, appellate counsel, Attorney Raben, argued, *inter alia*, that the Court abused its discretion by denying Neuhard's request to admit evidence that he had offered to take a polygraph. ECF No. 175, PageID.1674. The Sixth Circuit affirm this Court's denial, finding that the polygraph evidence "was marginally relevant at best." *Neuhard*, 770 F. App'x at 255. Appellate counsel did not raise the Court's denial of Neuhard's motion for a mistrial.

6

## B. The Instant Motion

Neuhard now seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. ECF No. 175. He raises three arguments in support of his Motion to Vacate. *Id*. First, he contends he was deprived of his Sixth Amendment right to effective assistance of appellate counsel because Attorney Raben failed to raise a meritorious issue on direct appeal. *Id.* at PageID.1672–78. Specifically, Neuhard asserts that appellate counsel was deficient for failing to raise as an issue on appeal the Court's denial of trial counsel's motion for mistrial based on the introduction of inadmissible and allegedly prejudicial polygraph evidence. *Id*. Second, Neuhard argues he was deprived of his Sixth Amendment right to effective assistance of trial counsel because Attorney Korn failed to present evidence of Neuhard's autism, failed to request an evidentiary hearing on whether Agent Keith's polygraph testimony was inadvertent, failed to adequately present evidence of Neuhard's autism as a mitigating factor at sentencing, and failed to investigate by not interviewing the mother of the victims prior to trial. *Id.* at PageID.1690–1700. Third, Neuhard asserts he was deprived of his Sixth Amendment right to effective assistance of appellate counsel because Attorney Raben admitted she inadvertently failed to file a notice of appeal from the restitution order. *Id.* at PageID.1701–03.

7

The Government concedes that appellate counsel "performed deficiently by failing to file a notice of appeal on the amended judgment, despite Defendant's specific request to do so." ECF No. 184, PageID.1761. The Government thus agrees that Neuhard should be permitted to file a notice of appeal from the amended judgment so that he can appeal the order of restitution in this case. *Id*. Nevertheless, the Government disputes Neuhard's remaining claims of error. *Id*. at PageID.1746–60. For the following reasons, the Court will grant in part and deny in part Neuhard's Motion to Vacate.

### III.   LAW & ANALYSIS

### A. Legal Standard

Under § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that, *inter alia*, "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "any deficiencies in counsel's performance must [have] be[en] prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), *superseded on other grounds* by Antiterrorism and Effective Death Penalty

8

Act of 1966, Pub. L. No. 104-132, 110 Stat. 124; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011).

With respect to the performance prong, the Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal quotation marks omitted). The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The court must make "every effort" "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 690. In doing so, defense counsel is entitled to a "strong[] presume[ption]" that he or she made "all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690).

To show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. However, "a defendant

9

need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.  In determining whether defense counsel's errors resulted in the required prejudice, the court presumes the judge and jury acted according to the law. *Id.* at 694-95.

### B. Discussion

Generally, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either (1) "cause and actual prejudice" or (2) "actual[] innocen[ce]." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted).  Ineffective assistance of counsel claims, however, are not subject to this rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Accordingly, the Court will proceed to address the merits of Neuhard's claims even though they were not raised in his direct appeal to the Sixth Circuit. *See* ECF No. 169.

### 1. Ineffectiveness of trial counsel

### i.  Failure to present evidence of autism at trial

Neuhard asserts that trial counsel was ineffective because he did not present evidence of Neuhard's autism at trial despite "notice" that Neuhard's demeanor would be at issue based on Neuhard's interrogation.  ECF No. 175, PageID.1693-96.

10

The Sixth Circuit has held that a "strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) (citing *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997)).   The Supreme Court has noted that the "situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach" are "rare."   *Harrington*, 562 U.S. at 106 (internal quotation marks omitted).   Nevertheless, "[d]espite the strong presumption that defense counsel's decisions are guided by sound trial strategy, it is not sufficient for counsel to merely articulate a reason for an act or omission alleged to constitute ineffective assistance of counsel.   The trial strategy itself must be objectively reasonable." *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001).

As an initial matter, in its brief, the Government contests whether Neuhard even has autism.   ECF No. 184, PageID.1748.   However, at the evidentiary hearing on the Motion, the Government objected to Neuhard calling his autism expert because, in its position, whether or not Neuhard has autism or the severity of it are not before the Court.   Instead, the issues before the Court, according to the Government, are whether trial counsel was deficient for failing to present evidence of Neuhard's autism at trial or consult with an autism specialist for sentencing.

11

While this Court overruled the Government's objection, it agrees that it need not determine whether Neuhard is autistic, or the severity of his autism, to resolve Neuhard's claims.

The Government also asserts that trial counsel was not ineffective because Neuhard would not have been able to admit evidence of his autism as an affirmative (diminished capacity) defense or to negate the *mens rea* of the charged offenses. ECF No. 184, PageID.1749–53. The Government misunderstands Neuhard's argument. Instead, Neuhard contends that the evidence should have been admitted because the Government put his flat affect at issue via Sergeant Zupic's testimony and the clips of Neuhard's interrogation. ECF No. 190, PageID.1816. However, the Court need not determine whether evidence of Neuhard's autism is admissible for this purpose because it finds trial counsel's performance was not deficient in this regard.

Trial counsel's failure to introduce evidence of Neuhard's autism at trial was clearly a strategic decision. Attorney Korn attested that he "noticed immediately" during their initial meeting that Neuhard "was unusually slow to respond to questions and often responded in a rigid and awkward manner." ECF No. 184-2, PageID.1765. In response, Attorney Korn consulted about Neuhard's affect and autism with Neuhard's first attorney and the psychologist prior counsel had engaged.

12

*Id.* at PageID.1765-66.  He also reviewed Neuhard's school records as well as books and articles about autism and criminal sexual conduct cases.  *Id.*  at PageID.1766. Finally, Attorney Korn discussed the matter with Neuhard's parents and Neuhard himself on several occasions.[1]  *Id.*

Attorney Korn attested that he was aware of Neuhard's flat affect during Neuhard's interrogation.  *Id.*  Nevertheless, "after considering all the information" he had obtained, he "made a strategic decision not to introduce evidence of [Neuhard's] autism at trial unless it was absolutely necessary."  *Id.*  Attorney Korn explained that he was concerned that the marginal benefit to Neuhard of introducing evidence of Neuhard's autism "would be outweighed by the risk that the jury would perceive [Neuhard] as a mentally ill 'monster' who could not control his impulses to sexually abuse children" regardless of whether an expert testified that such conclusions are invalid.  *Id.* at PageID.1766-67.  Attorney Korn hoped that the jury would ascribe an innocent explanation to Neuhard's unemotional response during the interrogation.   *Id.* at PageID.1767.    He thus determined that introducing testimony of Neuhard's autism "would increase, not decrease, the odds of conviction."  *Id.*

---

[1] The Court notes that Neuhard's father is the former Director of the State Appellate Defender's Office for the State of Michigan and former President of the National Legal Aid and Defender Association.  Fed. R. Evid. 201.

13

Attorney Korn did not change his mind over the course of the trial because he did not notice anything unusual about Neuhard's demeanor as Neuhard was well-behaved and engaged in the process. *Id.* In both his affidavit and during the evidentiary hearing, Attorney Korn affirmed that, although he wrestled with the decision, he would make the same one if he had to do it over again. *Id.*

Neuhard argues that "leaving it to the jury with no guidance is not a 'strategic decision,'" ECF No. 190, PageID.1815, but Attorney Korn's testimony clearly belies this characterization. Attorney Korn consulted various sources, including Neuhard's father, who happens to be one of the preeminent defense attorneys in Michigan, before deciding the potential benefits of introducing Neuhard's autism at trial were not worth the risks. This decision was clearly well-reasoned, regardless of whether other attorneys might have made a different one. *Miller*, 269 F.3d at 616 (noting counsel's strategic decision "need not be particularly intelligent or even one most lawyers would adopt, but it must be within the range of logical choices an ordinarily competent attorney . . . would assess as reasonable to achieve a 'specific goal'"); *see also Harrington*, 562 U.S. at 108 ("An attorney need not pursue an investigation that would be fruitless, *much less one that might be harmful to the defense*." (emphasis added)). Accordingly, Neuhard cannot satisfy the performance prong of a *Strickland* claim with respect to this claim.

14

ii.    **Failure to request an evidentiary hearing regarding Agent Keith's polygraph testimony**

Neuhard also maintains that trial counsel was ineffective for not requesting an evidentiary hearing to determine whether Agent Keith was forewarned to not bring up the issue of polygraphs during her testimony.  ECF No. 175, PageID.1696.  He further asserts that trial counsel had no basis on which to concede that Agent Keith made an inadvertent mistake given her experience and the Court's caution not to introduce hearsay.  ECF No. 190, PageID.1818 (citing ECF No. 126, PageID.981-85).  The Court need not determine whether trial counsel's failure to request an evidentiary hearing under these circumstances constitutes deficient performance because the failure to request an evidentiary hearing did not prejudice the defense.

As a preliminary matter, the Court notes that Neuhard's claim is largely speculative.  Specifically, he hypothesizes that if trial counsel had requested an evidentiary hearing, he would have discovered malfeasance either on the part of the prosecutor or Agent Keith.  He further hypothesizes that the Court would have granted a mistrial on that basis, as opposed to relying on another remedy.  Neuhard's speculation on both these points is insufficient to support a claim for ineffective assistance of counsel.  *See Harrington,* 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007) ("Cross's ineffective assistance claim is doomed

15

by the fact she makes nothing more than conclusory assertions about actual prejudice.  Her conclusory assertions fall far short of showing actual prejudice.").

Notably, Neuhard's assumptions about his success if trial counsel had requested an evidentiary hearing have proven incorrect.  Agent Keith testified during the evidentiary hearing on the instant Motion that the prosecutor had instructed her not to mention the polygraphs during her testimony, but she did not recall hearing the Court's admonition about hearsay prior to her mistake.  Additionally, despite having been in law enforcement for nearly fifteen years, it was her first time testifying in a jury trial and her response was unintentional.  She further stated that she immediately "felt like an idiot."  Thus, if trial counsel had requested an evidentiary hearing, it would not have shown overwhelming evidence of deliberateness on the part of Agent Keith or the prosecutor.

Even if it had, *United States v. Murray*, on which Neuhard heavily relies to support his claim, does not mandate reversal.  784 F.2d 188, 189 (6th Cir. 1986) ("We do *not* hold that under any and all circumstances in every case where the words 'polygraph examination' are mentioned, a grant of a new trial would be required.").  Indeed, the Sixth Circuit has held that "[a] curative instruction or the strength of other evidence may render the remark harmless."  *United States v. Little*, 9 F.3d 110, *11 (6th Cir. 1993) (table) (citing *United States v. Walton*, 908 F.2d 1289, 1293-94

16

(6th Cir. 1990)).  As such, reference to a polygraph concerning a testifying witness other than the defendant is reversible "only if (1) an inference about the result of the test may be critical in assessing the witness' credibility, and (2) the witness' credibility is vital to the case." *Id*.  Although Sanchez Fernandez, Rustam Razzaq, and Forest McNiff did not testify, Neuhard cannot satisfy this standard because the credibility of these men was not vital to the case.  The photos were taken in January 2014, ECF No. 125, PageID.847-54, but witnesses testified that these men lived in the house between 2012 and 2013, ECF No. 127, PageID.1055-60, ECF No. 123, PageID.614, PageID.618.  Because other evidence in the record undermined the defense theory that one of these men took the photos, their credibility was not "vital." *See United States v. Winkelman*, 101 F.3d 703, *3 (6th Cir. 1996) (table) ("Not only was [witness'] credibility not vital to the case, his testimony was not vital in light of the other evidence presented.").

Thus, assuming *arguendo* that trial counsel erred by not requesting an evidentiary hearing about Agent Keith's polygraph testimony, Neuhard cannot show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Accordingly, Neuhard cannot satisfy the prejudice prong with respect to this claim, and it fails.

17

### iii.   Failure to adequately present autism at sentencing

Neuhard asserts that trial counsel's "presentation of information regarding Defendant's autism at sentencing was inadequate and denied [Neuhard] the effective assistance of counsel." ECF No. 175, PageID.1697. Specifically, Neuhard argues that trial counsel erred by using a report prepared by Dr. Steven Miller, Ph.D., that referred to Neuhard's autism as "mild/less severe" because the Government argued at sentencing that Neuhard's mild autism should not count as a mitigating factor and should instead count as an aggravating factor. *Id.* Dr. Andrew Maltz, who evaluated Neuhard in support of his habeas petition, disputes the description of autism as having varying degrees of severity; he asserts that all individuals with autism are similarly impaired but have different levels of cognition.   ECF No. 175, PageID.1698

The Court concludes that Neuhard cannot satisfy the performance prong of the *Strickland* standard for this claim. During the sentencing hearing, trial counsel argued at length that Neuhard's autism had profoundly impacted his life and that the Court should consider it a mitigating factor. ECF No. 154, PageID.1516-58. Nevertheless, Neuhard argues that trial counsel relied on the wrong expert in doing so. ECF No. 190, PageID.1819. He cites several out of circuit opinions for the

18

proposition that a reasonable attorney would have selected an expert in the precise field at issue. *Id.* at PageID.1820.

However, the Sixth Circuit has held that "[t]he Constitution does not require that an indigent criminal defendant be able to retain the expert of his choosing, only that a competent expert be made available." *Lundgren v. Mitchell*, 440 F.3d 754, 772 (6th Cir. 2006) (citing *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985)). Moreover, "[a] licensed practitioner is generally held to be competent, unless counsel has good reason to believe to the contrary." *Id.* Trial counsel had no reason to doubt Dr. Miller's competency at the time. Moreover, nothing in Dr. Miller's report indicated that further investigation into Neuhard's autism was necessary. *See Clark v. Mitchell*, 425 F.3d 270, 285 (6th Cir. 2005) (finding that "[i]t was not unreasonable for [defense] counsel, untrained in the field of mental health," to not hire a neuropsychologist when the psychologists counsel had retained did not indicate that one was necessary). Indeed, even now, it seems that Dr. Maltz's disagreement with Dr. Miller is more semantic than anything else. Ultimately, both agree that Neuhard has higher cognitive abilities than those with—what Dr. Maltz would say is incorrectly labeled as—"severe" autism. "Absent a showing that trial counsel reasonably believed that Dr. [Miller] was somehow incompetent or that additional testing should have occurred, simply introducing the contrary opinion of another

19

mental health expert during habeas review is not sufficient to demonstrate the ineffectiveness of trial counsel." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 758 (6th Cir. 2013). Accordingly, Neuhard is not entitled to habeas relief on this claim.

### iv.   Failure to investigate

Neuhard also contends that trial counsel was ineffective for failing to interview Sabina Shaoou, the mother of the victims, before trial. Neuhard alleges that when she was interviewed by a defense investigator in July and August 2020, Shaoou shared her belief that Forrest McNiff, who was contracted to remodel Debra Razzaq's basement, joined with Neuhard to molest her children and his own, but she did not share these suspicions with the police. ECF No. 175, PageID.1699. Neuhard argues that if Shaoou had been interviewed prior to trial, trial counsel could have engaged in additional investigation and cross examination regarding the defense theory of third-party culpability for the photos. *Id.* at PageID.1699-1700. In particular, trial counsel could have discovered that McNiff was charged in 2005 with two counts of criminal sexual conduct in the first degree for molesting his daughter. ECF No. 190, PageID.1823.

As to the performance prong of the *Strickland* test, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes

20

particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  In so doing, "Counsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 562 U.S. at 107.  As such, "[a]n attorney need not pursue an investigation that would be fruitless, *much less one that might be harmful to the defense*." *Id.* at 108 (emphasis added).

Here, trial counsel's decision not to interview Shaoou before trial was clearly a reasoned strategic decision.  Attorney Korn attested via affidavit and testified at the evidentiary hearing that he worked very closely with Shaoou's sister and mother while preparing the case, and they repeatedly told Attorney Korn that Shaoou and her husband adamantly believed their children's accusations.  ECF No. 184-2, PageID.1769.  He specifically chose not to further cross examine Shaoou about potential third-party culpability because he did not want to open the door for her to explain why she was so certain Neuhard was the culprit. *Id.* at PageID.1769-70. *See Tinsley v. Million*, 399 F.3d 796, 809–10 (6th Cir. 2005) ("[I]t is far from true that bad testimony beats no testimony at all[,] . . . given the risk that every positive argument by a defendant potentially opens the door to a more-harmful response." (internal quotation marks omitted)).  This decision was "within the range of logical choices an ordinarily competent attorney . . . would assess as reasonable to achieve

21

a 'specific goal.'"  Thus, the Court concludes trial counsel's performance was not deficient under these circumstances.

Further Neuhard cannot show that he was prejudiced by trial counsel's decision not to interview Shaoou before trial.  As a preliminary matter, Neuhard provides no evidence from Shaoou that she would have testified as he describes.  *See Tinsley*, 399 F.3d at 810 (rejecting petitioner's ineffective assistance of counsel claim based on the failure to call witnesses because the petitioner failed to "introduce[] affidavits or any other evidence establishing what they would have said").  Nor does it appear that the defense investigator's testimony at the evidentiary hearing is sufficient.  *See United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006) ("[I]t was not an abuse of discretion for the district court not to hold a hearing on the issue of the uncalled witnesses when [petitioner] failed to point to any evidence (e.g., affidavits), besides his counsel's bare assertion, of what the witnesses would testify to.").

Regardless, Shaoou testified at the evidentiary hearing that she did not tell the defense investigator that McNiff had sexually assaulted her daughters or taken sexually explicit images using Neuhard's laptop.  Moreover, she testified that despite asking MV-1 "hundreds" of times, MV-1 never stated that anyone else had touched her inappropriately.  Accordingly, Neuhard cannot show "that there is a reasonable

22

probability that, but for counsel's [failure to interview Shaoou before the trial], the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, and he is not entitled to habeas relief on this claim.

### v.   Cumulative effect

In determining the prejudice from counsel's errors, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.  Here, however, whether trial counsel's alleged errors are viewed collectively or in isolation, Neuhard is unable to show he was "deprive[d] . . . of a fair trial, a trial whose result is reliable." *Id.* at 687.  Indeed, the Court did not find trial counsel's performance was deficient in any of the ways Neuhard alleged.  Accordingly, Neuhard has not established a claim for ineffective assistance of trial counsel.

### 2.  Ineffectiveness of appellate counsel

Finally, Neuhard asserts that he was denied the effective assistance of appellate counsel because appellate counsel raised the Court's denial of trial counsel's request to introduce evidence that Neuhard had offered to take a polygraph as an issue on appeal and did not raise the Court's denial of trial counsel's motion for a mistrial.  ECF No. 175, PageID.1673.

> In *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L.Ed.2d 987 (1983), [the Supreme Court] held that appellate counsel who files a

23

> merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.  Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent.  *See, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

For the reasons discussed in Section III.B.1.ii *supra*, it is not clear that the omitted mistrial argument is "clearly stronger" than the evidentiary claim appellate counsel did raise.  *See Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003).  Neuhard argues that the evidentiary claim was based on "introducing more inadmissible evidence, fraught with the unhelpful fact that Defendant's counsel ultimately withdrew that offer."  ECF No. 175, PageID.1677.  However, as the Sixth Circuit noted on appeal, "in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible."  *Neuhard*, 770 F. App'x at 255 (internal quotation marks omitted).  In contrast, as stated *supra*, the Sixth Circuit will reverse the denial of a motion for a mistrial based on a reference to a polygraph taken by someone other than the defendant "*only* if (1) an inference about the result of the test may be critical in

24

assessing the witness' credibility, and (2) the witness' credibility is vital to the case." *Little*, 9 F.3d 110, \*11 (emphasis added).  The men at issue did not testify, there was evidence that they did not Because the omitted argument is not clearly stronger than the one presented on appeal, Neuhard's ineffective assistance of appellate counsel claim must fail.

## IV.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Neuhard's Motion to Vacate Sentence (ECF N0. 175) is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Motion is **GRANTED** with respect to Neuhard's claim that appellate performed deficiently by failing to file a notice of appeal of the Amended Judgment regarding restitution despite Neuhard's specific request to do so; the Motion is **DENIED** in all other respects.  Neuhard is permitted to file a notice of appeal from the Amended Judgment (ECF No. 165), limited to appealing the order of restitution in this case, within **fourteen (14) days** of this order.  *See* Fed. R. App. P.4(b).

25

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  October 18, 2022

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 18, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager